UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, Plaintiff, | ) | |
| v. | ) | No. 4:22-cr-00313-HEA |
| LYNN HOOKS, Defendant. | ) | |

**GUILTY-PLEA AGREEMENT**

Come now the parties and hereby agree, as follows:

**1. PARTIES:**

The parties are the Defendant Lynn Hooks, represented by defense counsel W. Scott Rose and Neilson Lea, and the United States of America (hereinafter "United States" or "Government"), represented by the Office of the United States Attorney for the Eastern District of Missouri. This agreement does not, and is not intended to, bind any governmental office or agency other than the United States Attorney for the Eastern District of Missouri. The Court is neither a party to nor bound by this agreement.

**2. GUILTY PLEA:**

**A. The Plea:** Pursuant to Rule 11(c)(1)(A), of the Federal Rules of Criminal Procedure, in exchange for the Defendant's voluntary plea of guilty to Count One and Count Two of the Indictment, the United States agrees that no further federal prosecution will be brought in this District relative to the Defendant's violations of federal law, known to the United States at this time, arising out of the events set forth in the Indictment, namely aiding and abetting others in false

statements in the acquisition of a firearm on July 14, 2017, and conspiracy to make false statements in the acquisition of a firearm for conduct occurring between June 2, 2017 and July 14, 2017.

**B.** **The Sentence:** The parties agree that the recommendations contained herein fairly and accurately set forth some guidelines that may be applicable to this case. The parties further agree that either party may request a sentence above or below the U.S. Sentencing Guidelines range (combination of Total Offense Level and Criminal History Category) ultimately determined by the Court pursuant to any chapter of the Guidelines, Title 18, United States Code, Section 3553, or any other provision or rule of law not addressed herein. The parties further agree that notice of any such request will be given no later than ten (10) days prior to sentencing and that said notice shall specify the legal and factual bases for the request. The parties understand that the Court is neither a party to nor bound by the Guidelines recommendations agreed to in this document.

**3. ELEMENTS:**

**A.** **Count I:** As to Count One, the Defendant admits to knowingly violating Title 18, United States Code, Section 922(a)(6), aided and abetted by the co-defendants, and admits there is a factual basis for the plea and further fully understands that the elements of the crime are as follows:

**(i)** The Defendant knowingly made a statement in ATF Form 4473;

**(ii)** The Defendant made the statement to a federally licensed firearms dealer;

**(iii)** The statement was false;

**(iv)** The Defendant knew the statement was untrue when made; and

**(v)** The statement was material to the sale of the firearm.

B. **Count II:** As to Count Two the Defendant admits to conspiring with the codefendants to make a false statement in the purchase of a firearm thereby knowingly violating Title 18, United States Code, Section 371, and admits there is a factual basis for the plea and further fully understands that the elements of the crime are as follows:

**(i)** There was an agreement between two or more persons to commit the crime of making a false statement in the purchase of a firearm as charged in the indictment;

**(ii)** The Defendant became a member of the conspiracy knowing of at least one of its objects and intending to help accomplish it; and,

**(iii)** One of the members of the conspiracy performed at least one overt act for the purpose of carrying out the conspiracy.

4. **FACTS:**

The parties agree that the facts in this case are as follows and that the United States would prove these facts beyond a reasonable doubt if the case were to go to trial. These facts may be considered as relevant conduct pursuant to Section 1B1.3:

On May 15, 2017, Codefendant Carter signed an Order of Probation for the felony offense of possession of a controlled substance through the State of Missouri Department of Corrections Board of Probation and Parole. The Order of Probation imposed a firearm condition whereby Codefendant Carter agreed, in relevant part, that "I will not own, possess, purchase, receive, sell, or transport any firearms, ammunition … or any dangerous weapon if I am on probation or parole for a felony charge[.]"

Defendant Hooks is Codefendant Carter's mother. S.M. was involved in a romantic relationship with Codefendant Darius Carter. S.M. was twenty years old as of June 2, 2017, and,

due to her age, was prohibited from buying a handgun for another year.

Codefendant Dakota Carr, a friend and associate of Codefendant Carter, was employed by Piazza Jewelry & Pawn, at 10201 Page Avenue, a federally licensed firearms dealer and possessed a Federal Firearm License ("FFL"). Piazza Jewelry & Pawn is within the Eastern District of Missouri.

Beginning on June 2, 2017, and through July 14, 2017, the Defendant conspired with the codefendants to make a false written statement in the purchase of a firearm and to deceive Piazza Jewelry & Pawn to a fact material to the lawfulness of the sale of a firearm. The object and purpose of the conspiracy was twofold: (1) to obtain an HK 9mm firearm for Codefendant Carter, who was then prohibited by the terms of his probation from possessing firearms and ammunition, and (2) to obtain a Glock .380 caliber firearm for S.M. from Piazza Jewelry & Pawn. Codefendant Carter enlisted Defendant Hooks to make a false and fictitious written statement on an ATF Form 4473, that she was the actual buyer of the firearms. Codefendant Carter also enlisted Codefendant Carr to process the ATF Form 4473 transferring an HK model VP9 9mm firearm (serial number 224-021754) and a Glock .380 caliber firearm (serial number ACNF628) from Piazza Jewelry & Pawn to Defendant Hooks, who then transferred the firearms to Codefendant Carter and S.M.

On June 15, 2017, Defendant Hooks placed three firearms on a "lay away" payment plan at Piazza Jewelry & Pawn: the two intended for Codefendant Carter and S.M. and a third, a Glock model 42 .380 caliber firearm bearing serial number ACNH633, intended for Defendant Hooks. Thereafter, Codefendant Carter, S.M., and Defendant Hooks made payments to facilitate the purchase of the HK and Glock intended for Codefendant Carter and S.M.

On July 12, 2017, Codefendant Darius Carter and Codefendant Carr exchanged text

messages confirming that Codefendant Carter had approximately three to four hundred dollars remaining on the layaway plan for the HK. Two days later, on July 14, 2017, Codefendant Carter, Defendant Hooks, and S.M. went to Piazza Jewelry & Pawn. At the direction of Codefendant Carter, Defendant Hooks then knowingly made a false and fictitious written statement to Piazza Jewelry & Pawn that she was the actual buyer of the HK and the Glock, when, in fact, as the Defendants then knew, she was not the actual buyer of those firearms and she intended to transfer those firearms to Codefendant Carter and S.M. The false statements made when completing the ATF Form 4473 were material to the sale of the firearm.

Codefendant Carr, knowing of the plan, processed and signed the ATF Form 4473 in furtherance of the conspirators' agreement. Following payment of the remaining balance by the Defendant Hooks on behalf of Codefendant Carter and S.M., Codefendant Carr transferred the HK and the Glock to Defendant Hooks. Defendant Hooks then transferred possession of the firearms to Codefendant Carter, and S.M., respectively, and they took possession of those firearms that same day.

On July 15, 2017, Codefendant Carter and S.M. used the guns at a firing range and exchanged text messages about their guns. On July 26, 2017, Codefendant Carter texted Codefendant Carr about changing the color of his HK and attaching a light to his gun. On July 27, 2017, Codefendant Carr bought a light for Codefendant Carter using his employee discount. That same day, Codefendant Carter posted a photo to social media with an "INFORCE" light attached to a utility slide rail on his HK with a caption reading: "She is so beautiful … #hk #vpg #inforce #9mm."

On or about October 31, 2017, paramedics and police officers responded to a house shared

by Codefendant Carter and S.M. in St. Louis County, within the Eastern District of Missouri, where they found S.M.'s lifeless body. The investigation later revealed that S.M. died by gunshot. During the investigation, investigators located the Glock model 42 .380 caliber firearm purchased for her by the conspirators on or near her person. Further investigation of the bullet recovered following S.M.'s autopsy ruled out the Glock found in her pocket as the cause of her death. Instead, the weight of the bullet and the polygonal twist was consistent with having been fired out of an HK model 9 mm firearm, like the kind purchased by the conspirators on July 14, 2017 for Codefendant Carter. The United States acknowledges that other firearms manufacturers also utilize polygonal rifling. To date, the HK firearm has not been found.

**5. STATUTORY PENALTIES:**

**Count One:** The Defendant fully understands that the maximum possible penalty provided by law for the crime to which the Defendant is pleading guilty is imprisonment of not more than ten years, a fine of not more than $250,000, or both such imprisonment and fine. The Court also may impose a period of supervised release of not more than three years.

**Count Two:** The Defendant fully understands that the maximum possible penalty provided by law for the crime to which the Defendant is pleading guilty is imprisonment of not more than five years, a fine of not more than $250,000, or both such imprisonment and fine. The Court also may impose a period of supervised release of not more than three years.

**6. U.S. SENTENCING GUIDELINES (2021 MANUAL)**

The Defendant understands that this offense is affected by the U.S. Sentencing Guidelines and the actual sentencing range is determined by both the Total Offense Level and the Criminal

History Category. The parties agree that the following are the U.S. Sentencing Guidelines Total Offense Level provisions that apply.

A. **Chapter 2 Offense Conduct:**

i. **Base Offense Level:** The parties agree that the Base Offense Level is found in Section 2K2.1(a) and depends on, among other things, the nature of the Defendant's criminal history and the characteristics of the firearm. Defendant is fully aware that she may be subject to a higher base offense level if a the time of the offense Codefendant Carter was a "prohibited person," as used in Section 2K2.1(a), and defined in application note 3.

ii. **Specific Offense Characteristics:** The parties agree that the following specific offense characteristics apply: none.

B. **Chapter 3 Adjustments:**

i. **Acceptance of Responsibility:** The parties recommend that two levels should be deducted pursuant to Sentencing Guidelines Section 3E1.1(a) because the Defendant has clearly demonstrated acceptance of responsibility. If the deduction pursuant to Sentencing Guidelines Section 3E1.1(a) is applied, then the United States moves to deduct one additional level pursuant to Sentencing Guidelines Section 3E1.1(b)(2), because the Defendant timely notified authorities of the intention to enter a plea of guilty, thereby permitting the United States to avoid preparing for trial and permitting the Court to allocate its resources efficiently.

The parties agree that if the Defendant does not abide by all of the agreements made within this document, the Defendant's failure to comply is grounds for the loss of acceptance of responsibility pursuant to Sentencing Guidelines Section 3E1.1. The parties further agree that the Defendant's eligibility for a reduction pursuant to Sentencing Guidelines Section 3E1.1 is based

upon the information known at the present time and that any actions of Defendant which occur or which become known to the United States subsequent to this agreement and are inconsistent with Defendant's acceptance of responsibility including, but not limited to criminal conduct, are grounds for the loss of acceptance of responsibility pursuant to Sentencing Guidelines Section 3E1.1. In any event, the parties agree that all of the remaining provisions of this agreement remain valid and in full force and effect.

**C. Estimated Total Offense Level:** The parties agree that the Total Offense Level will depend on the Base Offense Level determined pursuant to Section 2K2.1(a), along with other relevant factors stated above.

**D. Criminal History:** The determination of the Defendant's Criminal History Category shall be left to the Court. Either party may challenge, before and at sentencing, the finding of the Presentence Report as to the Defendant's criminal history and the applicable category. The Defendant's criminal history is known to the Defendant and is substantially available in the Pretrial Services Report.

**E. Effect of Parties' U.S. Sentencing Guidelines Analysis:** The parties agree that the Court is not bound by the Guidelines analysis agreed to herein. The parties may not have foreseen all applicable Guidelines. The Court may, in its discretion, apply or not apply any Guideline despite the agreement herein and the parties shall not be permitted to withdraw from the plea agreement.

7. **WAIVER OF APPEAL AND POST-CONVICTION RIGHTS:**

A. **Appeal:** The Defendant has been fully apprised by defense counsel of the Defendant's rights concerning appeal and fully understands the right to appeal the sentence under Title 18, United States Code, Section 3742.

i. **Non-Sentencing Issues:** The parties waive all rights to appeal all non-jurisdictional, non-sentencing issues, including, but not limited to, any issues relating to pretrial motions, discovery and the guilty plea.

ii. **Sentencing Issues:** In the event the Court accepts the plea and, after determining a Sentencing Guidelines range, sentences the Defendant within or below that range, then, as part of this agreement, the Defendant hereby waives all rights to appeal all sentencing issues other than Criminal History. Similarly, the United States hereby waives all rights to appeal all sentencing issues other than Criminal History, provided the Court accepts the plea and sentences the Defendant within or above the determined Sentencing Guidelines range.

B. **Habeas Corpus:** The Defendant agrees to waive all rights to contest the conviction or sentence in any post-conviction proceeding, including one pursuant to Title 28, United States Code, Section 2255, except for claims of prosecutorial misconduct or ineffective assistance of counsel.

C. **Right to Records:** The Defendant waives all rights, whether asserted directly or by a representative, to request from any department or agency of the United States any records pertaining to the investigation or prosecution of this case, including any records that may be sought under the Freedom of Information Act, Title 5, United States Code, Section 522, or the Privacy Act, Title 5, United States Code, Section 552(a).

**8. OTHER:**

**A. Disclosures Required by the United States Probation Office:** The Defendant agrees to truthfully complete and sign forms as required by the United States Probation Office prior to sentencing and consents to the release of these forms and any supporting documentation by the United States Probation Office to the United States.

**B. Civil or Administrative Actions not Barred; Effect on Other Governmental Agencies:** Nothing contained herein limits the rights and authority of the United States to take any civil, tax, immigration/deportation or administrative action against the Defendant.

**C. Supervised Release:** Pursuant to any supervised release term, the Court will impose standard conditions upon the Defendant and may impose special conditions related to the crime Defendant committed. These conditions will be restrictions on the Defendant to which the Defendant will be required to adhere. Violation of the conditions of supervised release resulting in revocation may require the Defendant to serve a term of imprisonment equal to the length of the term of supervised release, but not greater than the term set forth in Title 18, United States Code, Section 3583(e)(3), without credit for the time served after release. The Defendant understands that parole has been abolished.

**D. Mandatory Special Assessment:** This offense is subject to the provisions of the Criminal Fines Improvement Act of 1987 and the Court is required to impose a mandatory special assessment of $100 per count for a total of $200, which the Defendant agrees to pay at the time of sentencing. Money paid by the Defendant toward any restitution or fine imposed by the Court shall be first used to pay any unpaid mandatory special assessment.

**E. Possibility of Detention:** The Defendant may be subject to immediate detention

pursuant to the provisions of Title 18, United States Code, Section 3143.

**F. Fines and Costs of Incarceration and Supervision:** The Court may impose a fine, costs of incarceration, and costs of supervision. The Defendant agrees that any fine imposed by the Court will be due and payable immediately.

**G. Forfeiture:** The defendant knowingly and voluntarily waives any right, title, and interest in all items seized by law enforcement officials during the course of their investigation, whether or not they are subject to forfeiture, and agrees not to contest the vesting of title of such items in the United States. The defendant agrees to abandon [his/her] interest in all seized items and further agrees that said items may be disposed of or destroyed by law enforcement officials in any manner without further notice. By abandoning these items, the defendant waives any future rights to receive additional notice, a valuation of the items, or the opportunity to submit a claim to contest the disposition or destruction of the items that may exist under any policies or procedures of the seizing agency(ies).

**9. ACKNOWLEDGMENT AND WAIVER OF THE DEFENDANT'S RIGHTS:**

In pleading guilty, the Defendant acknowledges, fully understands and hereby waives his rights, including but not limited to: the right to plead not guilty to the charges; the right to be tried by a jury in a public and speedy trial; the right to file pretrial motions, including motions to suppress or exclude evidence; the right at such trial to a presumption of innocence; the right to require the United States to prove the elements of the offenses charged against the Defendant beyond a reasonable doubt; the right not to testify; the right not to present any evidence; the right to be protected from compelled self-incrimination; the right at trial to confront and cross-examine adverse witnesses; the right to testify and present evidence and the right to compel the attendance

of witnesses. The Defendant further understands that by this guilty plea, the Defendant expressly waives all the rights set forth in this paragraph.

The Defendant fully understands that the Defendant has the right to be represented by counsel, and if necessary, to have the Court appoint counsel at trial and at every other stage of the proceeding. The Defendant's counsel has explained these rights and the consequences of the waiver of these rights. The Defendant fully understands that, as a result of the guilty plea, no trial will, in fact, occur and that the only action remaining to be taken in this case is the imposition of the sentence.

The Defendant is fully satisfied with the representation received from defense counsel. The Defendant has reviewed the United States' evidence and discussed the United States' case and all possible defenses and defense witnesses with defense counsel. Defense counsel has completely and satisfactorily explored all areas which the Defendant has requested relative to the United States' case and any defenses.

**10. VOLUNTARY NATURE OF THE GUILTY PLEA AND PLEA AGREEMENT:**

This document constitutes the entire agreement between the Defendant and the United States, and no other promises or inducements have been made, directly or indirectly, by any agent of the United States, including any Department of Justice attorney, concerning any plea to be entered in this case. In addition, the Defendant states that no person has, directly or indirectly, threatened or coerced the Defendant to do or refrain from doing anything in connection with any aspect of this case, including entering a plea of guilty.

The Defendant acknowledges having voluntarily entered into both the plea agreement and the guilty plea. The Defendant further acknowledges that this guilty plea is made of the

Defendant's own free will and that the Defendant is, in fact, guilty.

**11. CONSEQUENCES OF POST-PLEA MISCONDUCT:**

After pleading guilty and before sentencing, if Defendant commits any crime, other than minor traffic offenses, violates any conditions of release that results in revocation, violates any term of this guilty-plea agreement, intentionally provides misleading, incomplete or untruthful information to the U.S. Probation Office or fails to appear for sentencing, the United States, at its option, may be released from its obligations under this agreement. The United States may also, in its discretion, proceed with this agreement and may advocate for any sentencing position supported by the facts, including but not limited to obstruction of justice and denial of acceptance of responsibility.

**12. NO RIGHT TO WITHDRAW GUILTY PLEA:**

Pursuant to Rule 11(c) and (d), Federal Rules of Criminal Procedure, the Defendant understands that there will be no right to withdraw the plea entered under this agreement, except where the Court rejects those portions of the plea agreement which deal with charges the United States agrees to dismiss or not to bring.

11-14-23
Date

MICHAEL A. REILLY, #43908MO
NINO PRZULJ, #68334MO
Assistant United States Attorneys

11-14-23
Date

LYNN HOOKS
Defendant

11/14/2023
Date

61587
W. SCOTT ROSE
NEILSON LEA
Attorney for Defendant